**In re WHEELING–PITTSBURGH STEEL CORPORATION, et al., Debtor.**

**Bankruptcy No. 85–793PGH.
Motion No. 93–808.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 10, 1993.

See also 147 B.R. 874.

Thomas P. Shearer, Pittsburgh, PA, for the United Transp. Union.

David B. Fawcett III, Pittsburgh, PA, for debtor.

1. The UTU reduced its claims to writing in a document entitled UNITED TRANSPORTATION UNION'S ADMINISTRATIVE CLAIMS FILED PURSUANT TO ORDER OF COURT DATED FEBRUARY 11, 1991, which was assigned bank-

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Before the Court is the Motion of Wheeling–Pittsburgh Steel Corporation ("WPSC") and Monessen Southwestern Railway Company ("MSW") (WPSC and MSW collectively, "Debtor") for Summary Judgment on the Debtor's objection to the United Transportation Union's ("UTU") Administrative Claim No. 3.[1]

On April 16, 1985, the Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code. The UTU represents the former railroad employees of MSW. UTU Administrative Claim No. 3 seeks payment for "labor protection" to UTU members under § 1102(b) of the Pennsylvania Public Utility Code, 66 Pa.C.S.A. § 1102(b). The Debtor asserts that the provisions of the Public Utility Code are not applicable and that the Debtor is entitled to Summary Judgment disallowing UTU Administrative Claim No. 3 in its entirety.

### Procedural Background

UTU Administrative Claim No. 3 emanates from MSW's September, 1980 application to the Pennsylvania Public Utility Commission ("PUC") seeking decertification as a common carrier (the "Application"). The UTU intervened in the PUC proceedings and asserted that MSW remained a common carrier and was subject to the labor protection requirements of § 1102(b). Years of litigation followed.

On July 1, 1982, the PUC denied the Application. On April 24, 1984, the Commonwealth Court reversed the PUC. *Monessen Southwestern Ry. v. Pa. Public Utility Commission,* 82 Pa.Cmwlth. 13, 474 A.2d 1203 (1984). On June 4, 1985, the Pennsylvania Supreme Court affirmed the Commonwealth Court. *Monessen Southwestern Ry. v. Pa. Public Utility Commission,* 507 Pa. 586, 493 A.2d 666 (1985). The

ruptcy claim number 13903. Within the document, the UTU designates Administrative Claim No. 3 as its claim arising from 66 Pa.C.S.A. § 1102(b).

Pennsylvania Supreme Court found that MSW "is not a common carrier and is entitled to the granting of its application." *Id.* The case was remanded to the PUC "for proceedings under the labor protection provisions of § 1102(b)." *Id.*

The PUC then scheduled hearings to consider the implications of § 1102(b). At the request of WPSC, which was opposed by the UTU, we issued an order enjoining the UTU from proceeding before the PUC. Although MSW technically remained certified as a common carrier by the PUC, it was not in fact a common carrier for bankruptcy purposes. On the UTU's appeal, the District Court stayed the Bankruptcy Court's proceedings until the PUC completed the decertification process. On further appeal, the Third Circuit held that the failure of the PUC to decertify MSW as a common carrier was inconsequential for bankruptcy purposes. *Wheeling–Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153 (3d Cir. 1987).

We find that there are no material issues of fact and that the Debtor is entitled to Summary Judgment as a matter of law.

## Discussion

■ 66 Pa.C.S.A. § 1102(b) provides for the protection of rail-road employees when a public railroad carrier abandons or surrenders its right to operate. The PUC is empowered to prescribe the terms and conditions which it deems fair and equitable to provide that employees of the railroad carrier are not in a worse position with respect to their employment for a period of four years following the order authorizing the abandonment.

MSW ceased common carrier activities many years prior to its bankruptcy and prior to seeking decertification from the PUC in 1980. It has been judicially determined that MSW does not meet the Public Utility Code's definition of common carrier. *Wheeling–Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153 (3d Cir.1987); *Monessen Southwestern Ry. v. Pa. Public Utility Commission*, 507 Pa. 586, 493 A.2d 666 (1985). MSW had the right to cease to operate as a common carrier when it no

longer met the definition thereof. It was entitled to decertification upon Application in 1980 or at the latest by July 1, 1982, the date upon which the PUC should have appropriately granted MSW's Application.

■ The four year period of time at issue is the four year period from the point that MSW was entitled to decertification. In our view, that date was not later than July 1, 1982. MSW continued to operate and UTU employees continued to work under their Collective Bargaining Agreements until December, 1986. Thus, if § 1102(b) is applicable, UTU employees suffered no harm during the four year period following the date on which MSW was entitled to decertification and therefore are not entitled to any payment for "labor protection."

Further, the economic misfortune of MSW and the resultant misfortune of the UTU employees is not related to the fact that MSW ceased operations as a common carrier. MSW did not change its operations following the filing of the Application. Its eventual demise was due to the decline in WPSC's steelmaking business and the shutdown of the facility. Thus, UTU's Administrative Claim No. 3 arises not as a result of MSW ending its activities as a common carrier, but rather arises out of the cessation of the Debtor's business and the financial hardship that UTU employees suffered as a result of the bankruptcy.

■ The essence of the Third Circuit's holding in *Wheeling–Pittsburgh Steel Corp. v. McCune* is that the laws and regulations affecting a common carrier do not affect a bankrupt debtor that is in fact not a common carrier despite an outstanding state certificate granting common carrier status. It cannot be disputed that MSW was not operating as a common carrier at the time of the filing of its bankruptcy Petition. Under this scenario, § 1102(b) is inapplicable and UTU employees are not entitled to payment for labor protection.

For the above reasons, the Debtor's Motion for Summary Judgment will be granted. We need not reach the issue of wheth-

er Administrative Claim No. 3 is barred because of late filing.